IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DANAE MENDEZ-ARRIOLA, M.D.**

 **Plaintiff,**

v.               Case No. 3:09cv495/MCR/EMT

**WHITE WILSON MEDICAL CENTER PA,**
et al.

 **Defendants**
_____/

**O R D E R**

  Plaintiff, Danae Mendez-Arriola, M.D.,[1] has sued White Wilson Medical Center, P.A. ("Clinic"); White Wilson Properties Partnership ("WWP"); WW Real Estate, LLC ("WWRE"); Douglas W. Rigby, M.D.; and Alan L. Gieseman for disability discrimination, sex discrimination and retaliation under federal and state law; and breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty under state law in connection with her removal as a shareholder/employee of the Clinic and as a partner/investor in WWP. Mendez also seeks declaratory relief. Presently before the court are defendants' motion for a more definite statement or, in the alternative, motion to dismiss (doc. 52); and Mendez's motion for reconsideration of the court's order granting defendants' leave to reply (docs. 72, 77). For the reasons given below, defendants' motion will be granted in part and denied in part; Mendez's motion for reconsideration will be denied.

**Background**

  The allegations are as follows. In 1997, the Clinic, a Florida corporation located in Fort Walton Beach, Florida, employed Mendez as a radiologist. Rigby was president and director of the Clinic and Gieseman was its chief executive officer. In 1999, Mendez

---

[1] In her complaint, Mendez-Arriola abbreviates her name to Mendez; the court will do the same.

became a shareholder of the Clinic. On August 1, 2000, Mendez and the Clinic entered into a Shareholder Employment Agreement ("Clinic agreement") which incorporated the Clinic's bylaws.

WWP was a Florida partnership that owned the real property on which the Clinic operated its business. On February 28, 2002, Mendez signed a promissory note, payable to WWP, for one hundred twenty consecutive monthly installments of $606.64, and agreed to assume her pro rata share of WWP's obligations. In consideration for the note, Mendez acquired full partnership rights and interests in WWP, subject to certain vesting provisions.[2] Specifically, the promissory note provided that Mendez would vest in equity upon completion of ten years of service and full payment of the note. Furthermore, the note provided that termination from the Clinic, for any reason or no reason at all, would constitute withdrawal from WWP; and, in such event, only Mendez's principal would be refunded to her.

Some time later, the common leadership of the Clinic and WWP, including Rigby and Gieseman, reorganized the entities.[3] They formed WWRE, a Florida limited liability company, to take title to the real property held by WWP; and White Wilson Association, PA ("WWA"), to act as a holding company for both the Clinic and WWRE. Rigby became president of both WWRE and WWA. In 2007, WWRE purchased the real property from WWP for $24,290,000. WWP wrote to Mendez that her proportionate interest in the partnership was $661,000; she could cash out in 2006 and receive a payment of approximately $402,000, or wait until 2012 and receive approximately $1,165,000. WWP also provided Mendez with tax documentation related to capital gains on her individual equity interest in WWP, and paid her approximately $40,000 to cover her expected capital gains tax.

---

[2] Although Mendez does not discuss the vesting provisions in her complaint, the promissory note attached to her complaint defines "vesting" as having the same meaning as in the WWP partnership agreement. *See* Fed. R. Civ. P. 10(c); *Novoneuron Inc. v. Addiction Research Inst., Inc.*, 326 Fed. Appx. 505, 508 (11th Cir. 2009). This meaning is unclear, however, because Mendez did not attach the WWP partnership agreement to her complaint.

[3] The complaint is unclear as to when the reorganization occurred.

Case No: 3:09cv345/MCR/EMT

Some time prior to 2008, Mendez's work conditions at the Clinic deteriorated. A number of radiologists left the Clinic, leaving Mendez with an increased workload. Notwithstanding, Mendez was required to meet a newly-imposed 24-hour turnaround on her work. According to the complaint, the Clinic ignored Mendez's repeated requests for assistance and lowered her compensation by changing compensation formulas, double-charging her for transcription costs, and outsourcing more lucrative radiology work off-site. When Mendez complained, the Clinic leadership subjected her to continued abuse and unfair criticism, including blaming her for errors caused by problems with transcription services.[4] Mendez alleges that this abuse and unfair criticism was based on, at least in part, her female gender and the Clinic's perception that she was mentally or psychologically disabled. According to Mendez, although she was the senior member of the Clinic's radiology department, the Clinic denied her request to become director of the department and instead brought in an outside, male, radiologist to fill the position. In addition, when Mendez ran for election to the Clinic's board of directors, hoping to become its first female member, the all-male board rejected her.

On May 29, 2008, the Clinic's board of directors gave Mendez a letter advising her that its members had voted to summarily suspend her based on the May 27, 2008 recommendation of the Clinic's risk management committee. The same day, the Clinic informed Mendez that the suspension was for ninety days, and was based on errors in twenty-five of her patient files. According to Mendez, none of the identified errors affected the quality of medical care delivered to the patients or brought disrepute to the Clinic. On June 4, 2008, Mendez wrote to the Clinic that the suspension was an improper attempt to replace her with a younger male doctor and prevent her from vesting in WWP. Mendez requested a hearing pursuant to the Clinic's bylaws, which the Clinic failed to provide. Instead, on June 5, 2008, the board affirmed her suspension with a memorandum stating that Mendez would be suspended for at least ninety days; her return to work would be conditioned on parameters outlined by the Clinic; and she'd be required to seek additional

---

[4] The complaint provides no further details about the alleged abuse and unfair criticism.

education and a psychological evaluation, both approved by the Clinic. On June 6, 2008, the Clinic's medical director and Karl Metz, M.D., met with Mendez, telling her she was a "bad citizen" of the Clinic and a "liability;" she should return to work once she had "healed;" and she was required to undergo a psychological evaluation by a doctor of the Clinic's choosing before returning to work.[5] (Doc. 37, at ¶ 47.) In addition, they gave Mendez a document entitled "Citizenship Issues" which criticized her work style. On June 27, 2008, the Clinic responded to Mendez's June 4, 2008 letter, informing her of the board's vote to affirm her suspension. The letter notified Mendez that her return to work would be conditioned on parameters outlined by the Clinic, and required her to seek additional education and a psychological evaluation, both approved by the Clinic. Furthermore, the Clinic denied Mendez's July 4, 2008 written request for a hearing, stating that her letter had raised no material factual disputes and that her suspension was in accord with the Clinic's bylaws.

Mendez, through her counsel, informed the Clinic in writing of her belief that the Clinic was violating the Americans with Disabilities Act (ADA), Title VII of the 1964 Civil Rights Act, and the Florida Civil Rights Act, by requiring her to undergo a psychological evaluation, without any basis, before allowing her to return to work.[6] On October 16, 2008, according to Mendez was shortly after she complained that the Clinic's actions were discriminatory, the Clinic fired her. Prior to her termination, the Clinic hired a male radiologist as a shareholder of the Clinic.[7] According to Mendez, unlike her, the male radiologist was not required to work as an associate for two years prior to becoming a shareholder. Mendez alleges that most of the harms outlined above, including her termination, took place after the male radiologist was hired, and stemmed from the Clinic's intent to replace Mendez with a male. At the time, Mendez was the only female radiologist

---

[5] The complaint does not identify the Clinic's medical director by name, or explain Karl Metz's position with the Clinic.

[6] The complaint is unclear as to the date Mendez informed the Clinic of her belief.

[7] The complaint is unclear as to the identity or qualifications of the male radiologist.

Case No: 3:09cv345/MCR/EMT

working for the Clinic. Mendez alleges that after she was terminated the male radiologist assumed her workload. On December 8, 2008, WWP sent Mendez a check for $28,300.45, which WWP described as a refund of the principal of Mendez's payments into the partnership. On October 27, 2009, the Clinic sent Mendez a check for $40,000, which the Clinic described as payment for the redemption of her shareholder interest in the Clinic; the Clinic provided no explanation as to how it derived the figure, or why it took over a year after Mendez's termination for the Clinic to send the payment to her. Mendez alleges that she lost the value of her equity interest in the Clinic, WWP, and WWRE.[8]

On or about November 24, 2008, Mendez filed an administrative charge of discrimination, based on disability, sex and retaliation, with the EEOC. On or about August 9, 2009, Mendez received notice from the EEOC of her right to sue under the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. On November 3, 2009, Mendez filed this suit.

**Discussion**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). If the claim "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," a party may move for a more definite statement. Fed. R. Civ. P. 12(e). The court will grant a motion for more definite statement where it is "virtually impossible" to determine which of a complaint's factual allegations support its claims. *See Anderson v. Dist. Bd. of Tr.*, 77 F.3d 364, 366-67 (11th Cir. 1996). The more definite statement should present the claims with clarity and precision, allowing the defendant to discern, and respond to, the claims. *See id.*

To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to state a plausible claim to relief; merely reciting the elements of a cause of action will not suffice. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)*; Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). A claim is plausible when the plaintiff

---

[8] The complaint is unclear as to what extent Mendez had an equity interest in WWRE to begin with.

Case No: 3:09cv345/MCR/EMT

pleads facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id.* Although the court must accept well-pled facts as true, the court is not required to accept the plaintiff's legal conclusions. *See id.*; *Waters Edge Living, LLC v. RSUI Indemnity Co.*, 355 Fed. Appx. 318, 320 (11th Cir. 2009). The moving party bears the burden to show that the complaint should be dismissed. *See Superior Energy Servs., LLC v. Boconco, Inc.*, 2010 WL 1267173, at *5 (S.D. Ala. Mar. 29, 2010); *Vitola v. Paramount Automated Food Servs., Inc.*, 2009 WL 5214962, at *1 n.1 (S.D. Fla. Dec. 28, 2009).

<u>Motion for More Definite Statement</u>

Defendants argue that many counts in the amended complaint incorporate numerous allegations that are inapplicable to that count, rendering the complaint as a whole vague and confusing.[9] For example, defendants argue Mendez's breach of implied covenant claim against WWP and Rigby, which relates to the WWP partnership agreement, incorporates allegations regarding Mendez's termination from the Clinic.[10] In response, Mendez argues the allegations are applicable to her claim against WWP and Rigby because WWP and the Clinic shared common leadership, including Rigby, and her removal from WWP was justified by her wrongful termination from the Clinic. The court agrees. To the extent that defendants understand, but disagree with, Mendez's claims, their arguments are better suited to a motion to dismiss, not a motion for more definite statement.

In addition, defendants argue that some paragraphs in the complaint contain subparagraphs, in violation of the requirement that allegations be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The court notes, however, that Rule 8(d)(1) further states that "[n]o technical form is required." Notwithstanding the subparagraphs, the court considers defendants' detailed motion to dismiss as a good indication that they are fully

---

[9] Defendants previously moved for a more definite statement (doc. 25), which the court granted (doc. 32). Mendez subsequently filed an amended complaint (doc. 37).

[10] Count XV of the complaint.

Case No: 3:09cv345/MCR/EMT

capable of discerning, and responding to, Mendez's claims.[11]  *See Anderson*, 77 F.3d 366-367.  Accordingly, the motion for more definite statement will be denied.

Motion to Dismiss - "Many" Claims

Defendants begin their motion to dismiss with a recitation of the *Iqbal* standard, arguing that the court should dismiss "many of the Counts" because "many of [Mendez's] claims" are not plausible.  (Doc. 52.)  Defendants' sparse argument fails to identify which claims defendants are seeking the dismissal of.  *See* Fed. R. Civ. P. 7(b)(1); *Superior Energy Servs., LLC*, 2010 WL 1267173, at *5; *Vitola*, 2009 WL 5214962, at *1 n.1.

Motion to Dismiss - Medical Examination Claims

In Counts III and IV, Mendez alleges that the Clinic required Mendez to submit to a medical examination, which was neither job-related nor consistent with business necessity, in violation of federal and Florida law.  *See* 42 U.S.C. § 12112(d)(4); Florida Civil Rights Act of 1992 (FCRA), FLA. STAT. § 760.10 et seq.[12]  Defendants claim that Counts III and IV merely duplicate Mendez disability discrimination claims in Counts I and II.  Defendants rely on 42 U.S.C. § 12112(d)(1), which provides: "The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries."  Subsection (a) states the general rule prohibiting discrimination on the basis of disability.  *See* 42 U.S.C. § 12112(a).  Thus, according to defendants, violation of the prohibition against medical examination is merely evidence of disability discrimination, rather than a separate and distinct injury.  The Eleventh Circuit, however, has recognized an employee's private right to sue to enforce the prohibition against medical examinations under §12112(d)(4).  *See Harrison v. Benchmark Electronics*

---

[11] The court does not endorse Mendez's use of subparagraphs.  However, the court has already granted one motion for more definite statement, and finds that granting another would cause unnecessary delay.

[12] 42 U.S.C. § 12112(d)(4)(A) provides: "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

Case No: 3:09cv345/MCR/EMT

*Huntsville, Inc.*, 593 F.3d 1206 (11th Cir. 2010).[13] Accordingly, as to Count III, the court finds that Mendez's medical examination claim is separate from her disability discrimination claim. As to Count IV, however, Mendez provides no authority for a separate claim of medical examination under the FCRA.[14] Instead, Mendez cites to statutes prohibiting discrimination and retaliation, which do not mention medical examination at all. *See* FLA. STAT. §§ 760.10(1) (discrimination), 760.10(7) (retaliation). Thus, Count IV, Mendez's medical examination claim under the FCRA must be dismissed.[15]

Defendants also argue that Mendez waived her medical examination claim by signing the Clinic agreement, which incorporated the Clinic's bylaws. Specifically, Section 21.2 of the bylaws provides: "The Board may require a physical or psychological examination if it, in its sole discretion, considers such to be helpful in determining the suitability of a physician to remain in practice in this corporation." (Doc. 37-4.) Defendants rely on *Bledsoe v. Palm Beach County Soil and Water Conservation Dist*, 133 F.3d 816 (11th Cir. 1998) for the proposition that ADA rights may be waived. Defendants reliance on *Bledsoe* is misplaced, however; as Mendez notes, *Bledsoe* dealt with the waiver of rights, after the fact, as part of a voluntary settlement agreement. *Id.* at 819. An employee's rights under ADA may not be prospectively waived. *See Alexander v. Gardner-*

---

[13] The *Harrison* court's analysis focused on § 12112(d)(2), prohibiting medical examinations of job applicants, but the reasoning applies equally to § 12112(d)(4), prohibiting medical examinations of employees. *See Harrison*, 593 F.3d at 1212-1214; *Conroy v. New York State Dept. of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003)(holding that employees may bring an action under § 12112(d)(4) regardless of whether they are disabled)*; Fredenburg v. Contra Costa County Dept. of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999) (same); *Cossette v. Minn. Power and Light*, 188 F.3d 964, 969 (8th Cir. 1999) (same); *Roe v. Cheyenne Mtn. Conf. Resort, Inc.*, 124 F.3d 1221, 1228 (10th Cir. 1997) (same).

[14] The court notes that "Florida courts construe the FCRA in conformity with the ADA." *Izizarry v. Mid Fla. Comm. Servs, Inc.*, 2009 WL 2135113, at *2 (M.D. Fla. July 14, 2009); *Lenard v. A.L.P.H.A. "A Beginning" Inc.*, 945 So. 2d 618, 621 (Fla. 2d DCA 2006); *Wimberly v. Sec. Tech. Group, Inc.*, 866 So. 2d 146, 147 (Fla. 4th DCA 2004). Accordingly, the court's interpretation of handicap discrimination, as prohibited in FLA. STAT. §§ 760.10, conforms to the ADA. Mendez has provided no authority, however, suggesting that the FCRA provides a separate right of action for medical examinations.

[15] Defendants have not moved to dismiss Mendez's Florida law claims for disability discrimination (Count II) or retaliation for opposing disability discrimination (Count X). To the extent Mendez's allegations regarding medical examination support a claim under Florida law for discrimination or retaliation, that claim is preserved in Counts II and X, which incorporate the same factual allegations as Count IV.

*Denver Co.*, 415 U.S. 36, 51-52, 94 S.Ct. 1011, 1021 (1974) ("[A]n employee's rights under Title VII are not susceptible of prospective waiver."); *Bledsoe*, 133 F.3d at 819 (applying the *Gardner-Denver* analysis of Title VII rights to the ADA); *Sullivan v. River Valley School Dist.*, 20 F. Supp. 2d 1120, 1126 (W.D. Mich. 1998).[16] Accordingly, defendants' motion to dismiss Count III, Mendez's medical examination claim under federal law, will be denied.

<u>Motion to Dismiss - Sex Discrimination and Retaliation Claims</u>

In Counts V and VI, Mendez alleges that the Clinic discriminated against her because of her sex in violation of federal and Florida law.[17] *See* Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §§ 2000e-2, et seq.; FLA. STAT. § 760.10 et seq. Similarly, in Counts VIII and IX, Mendez alleges that the Clinic unlawfully retaliated against her for opposing sex discrimination. *See* 42 U.S.C. § 2000e-3; FLA. STAT. § 760.10(7). Defendants argue Mendez has failed to exhaust her administrative remedies as to these claims. *See Green v. Elixir Industries, Inc.*, 152 Fed. Appx. 838, 840 (11th Cir. 2005). Defendants do not dispute that Mendez timely filed a charge of discrimination with the EEOC; rather, they argue that the charge failed to allege any facts that would put the Clinic on notice of her sex discrimination and retaliation claims. According to defendants, the charge discusses only facts relevant to a claim of disability discrimination and retaliation. In response, Mendez argues the Clinic had sufficient notice of her Title VII claim, because her sex-based claims were within "the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges." *See Chanda v. Engelhardt/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000). The court agrees. Whereas, *in Chanda,* the court found that an investigation could not reasonably be expected to encompass retaliation based on national origin, as nothing in the plaintiff's charge mentioned such discrimination or a claim under Title VII, *see id.*, in this case, Mendez's

---

[16] Notwithstanding, even if the law recognized a prospective waiver, the court would not find the language in this case sufficient to constitute a knowing waiver of Mendez's rights under the ADA. See *Bledsoe*, 133 F.3d at 819.

[17] Title VII and the FCRA are construed similarly. *See Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007).

Case No: 3:09cv345/MCR/EMT

charge of discrimination gave notice of her claim under Title VII by stating: "The Clinic's actions were done in violation of Dr. Mendez's rights under the Americans with Disabilities Act; the Florida Civil Rights Act, Title VII and in retaliation for her complaint that she believed her federally protected rights were being violated." (Doc. 37-1.) Thus, the court finds that the EEOC investigation of Mendez's discrimination charge reasonably could be expected to encompass claims of sex discrimination and retaliation for opposing sex discrimination. *See Chanda*, 234 F.3d at 1225. Accordingly, defendants' motion to dismiss Counts V, VI, VIII and IX, containing Mendez's sex-based discrimination and retaliation claims, will be denied.

Motion to Dismiss - Breach of Clinic Agreement Claim

In Count XI, Mendez alleges that the Clinic breached the Clinic agreement by suspending and terminating her without cause, and failing to grant her the procedural protections provided by the Clinic agreement.[18] The interpretation of an unambiguous contract is a matter of law. *See Lawyer Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). The court accords a realistic, plain-language meaning to the words of the contract, and construes the contract as a whole, giving effect to all its provisions, in a manner consistent with reason and probability. *See Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009); *Ospina-Baraya v. Heiligers*, 909 So. 2d 465, 472 (Fla. 4th DCA 2005).

As to Section 25.1.d of the agreement, Mendez alleges that the Clinic failed to have the medical director inform her "of the general nature of the charges against [] her, and [invite her] to discuss, explain or refute them." (Doc. 37-4.) Defendants argue that, according to Mendez's own allegations, the medical director met with Mendez on June 6, 2008 and Mendez refuted the charges in her June 4, 2008 letter to the Clinic. These allegations, however, do not refute Mendez's allegation that the medical director failed to invite her to discuss, explain or refute the charges *after* he advised her of the charges; thus, Mendez's factual allegations, accepted as true, state a plausible claim for breach of the Clinic agreement. *See Iqbal*, 129 S. Ct. at 1949. Defendants' motion to dismiss Count

---

[18] Specifically, the disputed provisions are in the Clinic's bylaws, which are incorporated by reference into the Clinic agreement.

Case No: 3:09cv345/MCR/EMT

XI, Mendez's breach of Clinic agreement claim, will be denied. Defendants may raise their arguments as to the other provisions on motion for summary judgment.

Motion to Dismiss - Breach of Partnership Agreement Claim

In Count XIV, Mendez alleges that WWP and Rigby breached the WWP partnership agreement by expelling her. Defendants rely on the promissory note Mendez made in exchange for her interest in WWP, arguing that, by the note's plain language,"termination for any reason whatsoever or for no reason at all, from [the Clinic,] will constitute withdrawal from [WWP]." The note also provided that Mendez would vest in equity upon completion of ten years with the partnership and payment of full of the note; and, if Mendez terminated from WWP prior to vesting, she would receive only the refund of her principal. Mendez argues that these provisions were unenforceable; or, alternatively, that if the provisions were enforceable, her removal from WWP was still a breach of the partnership agreement because her removal from the Clinic was wrongful. Mendez offers the court no support for either proposition. Next, Mendez claims that WWP had treated her as if she were fully vested at the time of the sale of real property from WWP to WWRE. In support of her argument, Mendez alleges that WWP provided her with a written statement confirming the value of her proportionate interest; offered her the option to cash out as early as 2006, and paid her $40,000 to cover her expected capital gains tax. As with her previous arguments, it is unclear to the court how these allegations lead Mendez to conclude that Rigby or WWP breached the partnership agreement.[19] As defendants note, at no point does Mendez even identify the provision in the partnership agreement which WWP and Rigby allegedly breached. Accordingly, Count XIV, Mendez's claim of breach of the WWP partnership agreement, will be dismissed with leave to amend.

Motion to Dismiss - Breach of Implied Covenant of Good Faith and Fair Dealing Claims

In Counts XII and XV, Mendez alleges breach of implied covenant of good faith and fair dealing by, respectively, the Clinic as to the Clinic agreement, and Rigby and WWP as

---

[19] For that matter, it's unclear why these allegations lead Mendez to believe she was treated as if she were fully vested. The court reiterates that the promissory note states that the term "vesting" is defined in the same manner as that provided in the WWP partnership agreement, which Mendez has failed to provide.

Case No: 3:09cv345/MCR/EMT

to the WWP partnership agreement. Under Florida law, every contract contains an implied covenant of good faith and fair dealing designed to protect the parties' reasonable expectations. *See Centurion Air Cargo, Inc. v. United Parcel Service, Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id.* A breach of the implied covenant claim may be dismissed as redundant if the conduct violating the implied covenant is duplicative of the breach of contract claim. *See Merill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 2005 WL 975773, at *11 (S.D. Fla. Mar. 4, 2005). Indeed, this court has determined that, "in order to state a claim for breach of the implied covenant of good faith and fair dealing, [p]laintiffs must identify the specific contract term(s) giving rise to the implied duty of good faith and also allege how [d]efendants breached their implied duty, alleging facts different from those giving rise to the breach of contract claim." *See Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, at *6 (N.D. Fla. Sept. 19, 2006).

Defendants argue that Mendez has failed to allege facts on this claim different from those in her breach of contract claims. The court agrees. Mendez's claim for breach of implied duty against the Clinic is based on her allegation that she was "illegally harassed, summarily suspended, wrongfully terminated as an employee and improperly removed as a shareholder," the same allegation giving rise to her breach of Clinic agreement claim. Similarly, Mendez's claim for breach of implied duty against Rigby and WWP is based on her allegation that she was "illegally, wrongfully and/or unfairly expelled from [WWP]," the same allegation giving rise to her breach of the WWP partnership agreement claim. In addition, Mendez fails to identify the specific terms in either contract giving rise to the implied duty of good faith and fair dealing. *See Stallworth*, 2006 WL 2711597, at *6. In response, Mendez argues that, in *Stallworth*, the court denied a motion to dismiss a breach of implied duty claim, despite the plaintiffs' failure to specify a contract term giving rise to the duty or to allege a different factual basis. *See id.* However, as defendants note, the *Stallworth* court denied the motion to dismiss only because it could not "conclude beyond all doubt that Plaintiffs can prove no set of facts that would entitle them to relief." *Id.* After

*Stallworth* was decided, the Supreme Court retired the no-set-of-facts test. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In light of the more stringent pleading requirements of *Iqbal* and *Twombly*, Counts XII and XV, containing Mendez's claims of breach of implied duty of good faith and fair dealing, will be dismissed without prejudice to amend.

Motion to Dismiss - Breach of Fiduciary Duty Claim as to the Clinic

In Count XIII, Mendez alleges that Rigby and Gieseman, in their capacities as officers of the Clinic, owed fiduciary duties to her and breached those duties. Defendants argue that Rigby and Gieseman owed fiduciary duties to Mendez only in her capacity as a shareholder of the Clinic, not as an employee; thus, Mendez's claim should be dismissed because it focuses on Mendez's termination as an employee of the Clinic. *See Orlinsky v. Patraka*, 971 So. 2d 796, 802 (Fla. 3d DCA 2007) ("Fiduciary duties are not implicated when the issue involves the right of the minority stockholder qua employee under an employment contract") (citations omitted). In response, Mendez offers only generic authority for the proposition that corporate officers owe a fiduciary duty to the corporation and its shareholders. The court agrees with defendants. Accordingly, Count XIII, Mendez's claim of breach of fiduciary duty as to the Clinic, will be dismissed without prejudice to amend.

Motion to Dismiss - Breach of Fiduciary Duty Claim as to WWP

In Count XVI, Mendez alleges that Rigby, in his capacity as a partner in WWP, owed fiduciary duties to her and breached those duties. Defendants argue that the claim fails to meet the *Iqbal* standard. As defendants note, Florida law limits a partner's fiduciary duties to other partners, and Mendez has failed to identify which of the specified duties provided under Florida law defendants allegedly breached. *See* FLA. STAT. § 620.8404(2) and (3). In response, Mendez argues that her allegation that Rigby owed her unspecified fiduciary duties and "was directly involved in the illegal and wrongful termination of [Mendez] as an employee, her termination as a Clinic shareholder, and, consequently her wrongful expulsion from [WWP]" suffices to state a claim. (Doc. 37, at ¶ 258.) The court disagrees; Mendez's allegations consist of mere conclusory statements. *See Iqbal*, 129

S. Ct. at 1949. Accordingly, Count XVI, Mendez's claim of breach of fiduciary duty as to WWP, will be dismissed with leave to amend.

Motion to Dismiss - Declaratory Judgment Claims

In Counts XVII and XVIII, Mendez seeks declaratory judgments against the Clinic and against WWP and WWRE regarding the parties rights and obligations under the Clinic agreement and the WWP partnership agreement. "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 594 U.S. 118, 136, 127 S. Ct. 764, 766 (2007) (internal marks omitted). The Act is "an enabling Act, which confers discretion on the courts rather than an absolute right on the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S. Ct. 2137, 2143 (1995); *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). The purpose of the act is to provide relief from uncertainty with respect to rights and other legal relations. *See Eisenberg v. Std. Ins. Co.*, 2009 WL 3667086, at *2 (M.D. Fla. Oct. 26, 2009). A determination of "whether a contract was adequately performed is unrelated to the purpose behind the Declaratory Judgment Act." *Id.*; *see also Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, 2007 WL 2811080, *2 (E.D. Mo. 2007).

It appears that Mendez's declaratory judgment claims are, to some extent, redundant with her breach of contract claims. For example, Mendez alleges in Count XVII: "Dr. Mendez maintains that she has the right to remain an employee and shareholder of the Clinic. The Clinic maintains that it had the right to terminate and remove her as an employee and shareholder, respectively." (Doc. 37-4, at ¶ 265.) Similarly, in Count XVIII, Mendez alleges: "Dr. Mendez maintains that she has the right to remain a general partner of [WWP], which maintains it had the right to expel her as a general partner." (Doc. 37-4, at ¶ 272.) Although Mendez describes her request as for a declaration of the parties' rights under the contracts, she effectively seeks a declaration of breach and her damages. *See Eisenberg*, 2009 WL 3667086, at *2. To that extent, the court concludes that declaratory relief is inappropriate; instead, the court will consider the disputed provisions, and Mendez's damages, if any, when it considers her breach of contract claims.

Mendez, however, also argues that, even if the court found no breach of either the Clinic or WWP agreements, she would be entitled to a determination of her equitable interest in each entity, entitlement to profits, and valuation of amounts returned to her. To that extent, Mendez's declaratory judgment claims are not subsumed into her contract claims. Accordingly, Count XVII and XVIII, containing Mendez's declaratory judgment claims, will be dismissed without prejudice to an amendment.[20] In amending her complaint, Mendez should specify, as to the Clinic, WWP and WWRE, the factual basis for her claim that she is entitled to this determination.

Mendez's Motion for Reconsideration

Mendez also moves for reconsideration of the court's order granting defendants' request for leave to reply. Mendez claims that defendants' reply allowed them to unfairly get the "last word," and to "insert[] their own facts." (Doc. 75.) As to Mendez's first argument, the court notes that its local rules provide for a reply memorandum on good cause shown. N.D. Fla. Loc. R. 7.1(C). Also, on any motion, one party is always going to have the last word, and on a motion to dismiss, defendants have the burden so it makes sense they would be permitted to file a brief reply to plaintiff's response. *See Superior Energy Servs., LLC*, 2010 WL 1267173, at *5; *Vitola*, 2009 WL 5214962, at *1 n.1. Regarding Mendez's second argument, that defendants inserted their own facts, the court disagrees. As the court discussed in considering defendants' motion to dismiss Mendez's breach of contract claim against the Clinic, the court interpreted the defendants statement regarding a typographical error to refer to an error in their motion to dismiss, not in the Clinic agreement. Accordingly, Mendez's motion for reconsideration will be denied.

In conclusion, defendants' motion for a more definite statement or, in the alternative, motion to dismiss (doc. 52) is GRANTED in part and DENIED in part. To the extent defendants' motion is for a more definite statement, it is DENIED; to the extent the motion requests a dismissal, it is GRANTED as to Counts IV, XII, XIII, XIV, XV, XVI, XVII and XVIII

---

[20] Defendants also seek an award of costs associated with defending against the declaratory judgment actions. *See* FLA. STAT. § 86.01 ("The court may award costs as are equitable."). Defendants' request for costs is denied.

Case No: 3:09cv345/MCR/EMT

with leave to amend as outlined in the order, within 14 days,[21] and DENIED as to Counts III, V, VI, VIII, IX, and XI.[22] Defendants' response to plaintiff's amended complaint is due 14 days after the complaint is filed. Mendez's motion for reconsideration (doc. 77) is DENIED.

     **DONE and ORDERED** this 25th day of August, 2010.

          *s/ M. Casey Rodgers*
          **M. CASEY RODGERS**
          **UNITED STATES DISTRICT JUDGE**

---

[21] Plaintiff is not invited to amend the complaint, other than as specifically outlined in this order. No other additions or corrections are envisioned or permitted.

[22] Defendants did not move for the dismissal of Counts I, II, VII and X.

Case No: 3:09cv345/MCR/EMT