IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DANAE MENDEZ-ARRIOLA, M.D.**

    **Plaintiff,**

v.                                            Case No. 3:09cv495/MCR/EMT

**WHITE WILSON MEDICAL CENTER
PA, et al.,**

    **Defendants.**
_____/

## ORDER

The plaintiff, Danae Mendez-Arriola, M.D., has sued White Wilson Medical Center, P.A. ("Clinic"); White Wilson Properties Partnership ("WWP"); WW Real Estate, LLC ("WWRE"); Douglas W. Rigby, M.D.; and Alan L. Gieseman for disability discrimination, sex discrimination, and retaliation under both federal and state law and handicap discrimination, breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty under state law in connection with her removal as a shareholder/employee of the Clinic and a partner/investor in WWP.[1] Pending before the court is Defendants' Partial Motion to Dismiss Third Amended Complaint ("Complaint") (doc. 102), to which the plaintiff has responded in opposition (doc. 111).  For the reasons set forth below, the court finds that the defendants' motion should be granted in part and denied in part.

---

[1] Specifically, the plaintiff has sued the defendants for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; handicap discrimination and retaliation under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10, *et seq.*; and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the FCRA.  The plaintiff's remaining claims, including her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty, are asserted under Florida's common law.

Case No: 3:09cv495/MCR/EMT

**BACKGROUND**[2]

The Clinic, a Florida corporation located in Fort Walton Beach, Florida, hired the plaintiff as a radiologist in 1997. At all times pertinent to the plaintiff's Complaint, Rigby was the president and director of the Clinic and Gieseman was its chief executive officer. In 1999, the plaintiff became a shareholder of the Clinic and, on July 31, 2000, she and the Clinic entered into a Shareholder Employment Agreement ("Clinic agreement"). WWP is a Florida partnership that owned the real property on which the Clinic operated its business. Subsequent to becoming a partner in the Clinic, the plaintiff became a partner in WWP and, in connection therewith, signed a promissory note for $50,000 plus 8% interest, payable to WWP in one hundred twenty consecutive monthly installments of $606.64, and agreed to assume her pro rata share of WWP's obligations. According to the promissory note, the plaintiff's equity interest in WWP would vest after ten years of service as a partner and upon payment in full of the note. The promissory note also provided that termination from the Clinic, for any reason or no reason at all, would constitute withdrawal from WWP and that if termination occurred before the plaintiff fully vested in WWP, the plaintiff would receive only a refund of the principal she had paid on the note.

At some point after the plaintiff became a partner in WWP, the common leadership of the Clinic and WWP, including Rigby and Gieseman, decided to reorganize the entities.[3] It was contemplated that, as part of the reorganization, WWP would sell its property to WWRE and that a new entity, White Wilson Association, PA ("WWA"), would be formed to act as a holding company for the Clinic and WWRE, with Rigby to serve as its president.[4] In order to implement the UCP, the WWP partnership agreement was

---

[2] When considering a Rule 12(b)(6) motion, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff," which the court has done here. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

[3] The complaint is unclear as to precisely when this occurred, but states that the reorganization effort was referred to as the "Uniform Comprehensive Plan" or "UCP."

[4] The plaintiff states in her complaint that she received a number of documents in connection with the reorganization and that such documents, as well as a number of others, were attached as exhibits. There are no exhibits attached to the plaintiff's third amended complaint, however, and it does not appear that documents pertaining to the reorganization were attached to any of the plaintiff's previously-filed complaints.

amended, effective January 1, 2007. The amended agreement provided for the sale of WWP's real estate assets to WWRE and for the maintenance of capital accounts for each partner, with the partnership's net profits or losses to be allocated among all of the partners for income tax purposes in proportion to the number of shares each partner owned, whether vested or not. To avoid non-vesting partners having to pay income tax on proceeds they would not actually receive, the amended agreement provided for an annual payment to non-vested partners in an amount sufficient to cover the maximum tax liability on the net income allocated to the partner for that year. In the event of a withdrawal from the partnership, a non-vested partner's capital account, whether positive or negative, would be eliminated and the partner would receive only "a lump sum cash amount equal to the Partner's Buy-In Amount for Non-Vested Shares then held."[5] Like the promissory note, the amended agreement further provided that when a non-vested partner ceased to be a shareholder in the Clinic, the partner also ceased to be a partner in WWP.

According to the Complaint, at some point in 2007, work conditions at the Clinic began to worsen for the plaintiff. A number of radiologists left the Clinic, leaving the plaintiff with an increased workload. The Clinic attempted to force the plaintiff to outsource the more lucrative radiology work and, when she refused, imposed a 24-hour turnaround on her work. The Clinic ignored the plaintiff's repeated requests for assistance and lowered her compensation by changing compensation formulas and double-charging her for transcription costs. When the plaintiff continued to complain and request assistance, she was subjected to abuse and unfair criticism, which she contends was based, at least in part, on her gender and perceived disability. Moreover, although the plaintiff was the senior member of the Clinic's radiology department, the Clinic denied her request to become director of the department and instead hired a male radiologist to fill the position. And when the plaintiff ran for election to the Clinic's board of directors, hoping to become its first female member, the all-male board rejected her.

---

[5] According to the plaintiff's complaint, "Buy-In Amount for Non-Vested Shares" was defined in the amended partnership agreement as the principal amount paid by a partner for the partner's then non-vested shares.

Case No: 3:09cv495/MCR/EMT

On May 29, 2008, the Clinic's Board of Directors ("Board") advised the plaintiff that it had voted to summarily suspend her privileges based on the recommendation of the Clinic's risk management committee. The same day, the Clinic informed the plaintiff that her suspension would last for ninety days and was based on errors in twenty-five of her patient files. According to the plaintiff, none of the identified errors affected the quality of medical care delivered to the patients or brought disrepute to the Clinic. On June 4, 2008, the plaintiff wrote to the Clinic, expressing her belief that the suspension was an improper attempt to replace her with a younger male doctor and prevent her from vesting in WWP. The plaintiff requested a hearing pursuant to the Clinic's bylaws, which the Clinic failed to provide. Instead, on June 5, 2008, the Board affirmed the plaintiff's suspension with a memorandum stating that she would be suspended for at least ninety days, would be required to seek additional education and a psychological evaluation, and her return to work would be conditioned on parameters outlined by the Clinic. On June 6, 2008, the Clinic's medical director and another shareholder met with the plaintiff, telling her she was a "bad citizen" of the Clinic and a "liability," she should return to work only after she "healed," and she would be required to undergo a psychological evaluation by a doctor of the Clinic's choosing before returning to work.[6] They also gave the plaintiff a document entitled "Citizenship Issues" which criticized the plaintiff's work style. According to the plaintiff, however, she was the only female in the radiology department and did not work differently than any male working in her area.

On June 27, 2008, the Clinic responded to the plaintiff's June 4, 2008, letter, advising the plaintiff that the Board had affirmed her suspension based on the recommendation of the risk management committee and reiterating the matters set forth in the June 5 memorandum and June 6 meeting. The Clinic also denied the plaintiff's July 4, 2008, written request for an evidentiary hearing, stating that her letter had raised no material factual disputes and that her suspension was in accord with the Clinic's bylaws. The plaintiff informed the Clinic, through her counsel, that she believed the Clinic was violating the Americans with Disabilities Act (ADA), Title VII of the 1964 Civil Rights Act,

---

[6] The complaint does not identify the Clinic's medical director or the shareholder by name.

and the Florida Civil Rights Act by requiring her to undergo a psychological evaluation, without any basis, before allowing her to return to work.[7] The plaintiff was subsequently terminated.[8] On December 8, 2008, WWP sent the plaintiff a check for $28,300.45, which was the amount she had paid into WWP.[9] The plaintiff never cashed the check. The Clinic sent her another check on October 27, 2009 – this time for $40,000 – which the Clinic described as payment for the redemption of her shareholder interest in the Clinic.[10] The plaintiff complains that she was never compensated for the period of time she was on unpaid suspension and lost the true value her equity interest in the Clinic, WWP, and WWRE.[11]

At some point before the plaintiff was terminated, the Clinic hired a male radiologist who had previously worked part-time at the Clinic and made him a partner without requiring him to work for two years as an associate, as allegedly was required of female radiologists. The plaintiff claims that most of the harms outlined above, including her termination, took place soon after the male radiologist was hired and that the Clinic hired him with the intention of replacing her, at least in part because of her gender. On November 24, 2008, the plaintiff filed a charge of discrimination with the EEOC based on disability discrimination, sex discrimination, and retaliation. The EEOC issued its notice of right to sue on or about August 9, 2009, and this lawsuit ensued.

---

[7] The complaint is unclear as to the date of plaintiff's counsel's correspondence.

[8] Although there is some inconsistency in the plaintiff's complaint regarding the date of her termination, it appears that she was terminated on October 16, 2008.

[9] There was a notation on the check stub that payment was for "Payout to partner exiting partnership (reimburse 100% of principal buy-in)."

[10] Although the Clinic did not explain how it arrived at the amount, according to the Bylaws, a terminated physician is entitled to a payout based on a percentage of the gross amount of money actually collected during the six month period following the physician's termination.

[11] On May 1, 2007, the plaintiff received a financial statement from Gieseman indicating that her pre-closing interest in WWP was valued at $686,297.95 and that, of that amount, she would receive a cash distribution of $70,034.12 to pay her 2007 taxes, leaving a remaining interest in WWP of $616,263.83. The plaintiff also was advised, in connection with the reorganization, that if she were to "cash out early," her benefit under the proposed UCP would be $401,609.57, but if she were to remain until retirement, she would receive an estimated $1,165,461.63.

Case No: 3:09cv495/MCR/EMT

In response to the plaintiff's initial complaint, the defendants filed a motion for more definite statement, arguing that the complaint constituted a "shotgun" pleading to which it was difficult to respond (doc. 25).[12] The court granted the defendants' motion (doc. 32), and the plaintiff filed an amended complaint (doc. 37) on February 4, 2010. In response to the plaintiff's amended complaint, the defendants filed another motion for more definite statement or, in the alternative, to dismiss certain counts of her complaint for failure to state a claim upon which relief can be granted and for more definite statement as to the remaining counts (doc. 52). The court granted the defendants' motion in part and denied it in part (doc. 90). Specifically, the court denied the defendants' motion for more definite statement and to dismiss the plaintiff's claims for disability discrimination, sex discrimination and retaliation, and breach of contract against the Clinic; granted the defendants' motion to dismiss the plaintiff's claim for handicap discrimination; and granted the defendants' motion to dismiss – with leave to amend – the plaintiff's claims for breach of the WWP partnership agreement, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and declaratory relief. The plaintiff filed a second and then a third amended complaint, in response to which the defendants have moved to dismiss each of the claims previously dismissed with leave to amend.[13] For the reasons set forth below, the court finds that the defendants' motion should be granted in part and denied in part.

**DISCUSSION**

A.   Standard of Review

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks dismissal of the complaint for failure to state a claim on which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief;" detailed allegations are not required.

---

[12] Among other things, the defendants cited to the plaintiff's reincorporation of 106 paragraphs of general allegations" in each of the eighteen counts in her complaint.

[13] After the court dismissed certain counts of her first amended complaint, the plaintiff filed a second amended complaint. According to the defendants, there were certain errors in the numbering of the paragraphs in the plaintiff's second amended complaint, as a result of which the plaintiff filed a third amended complaint.

*See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As noted, when considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage*, 516 F.3d at 1284. The motion is properly denied if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim. *Id.* The allegations of the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. However, the court need not credit "[t]hreadbare recitals" of the legal elements of a claim unsupported by plausible factual allegations because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* When deciding a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto" and incorporated into the complaint by reference. *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006) (internal marks omitted); *Long v. Murray*, No 6:09-cv-1320, 2009 WL 4042961, at *1 (M.D. Fla. 2009) (slip op.).

B.    Plaintiff's Claims

   Breach of the WWP Partnership Agreement

In her first amended complaint, the plaintiff alleged that WWP and Rigby breached the WWP partnership agreement by expelling her. Relying on the promissory note, the defendants argued that the plaintiff's breach of contract claim against WWP and Rigby should be dismissed because the plaintiff's termination from the Clinic constituted a withdrawal from WWP, as a result of which the plaintiff was entitled to receive only a refund of her principal contribution. In response, the plaintiff argued that the provisions of the promissory note allowing for her expulsion were invalid and/or unenforceable or, in the alternative, that her removal from WWP nevertheless constituted a breach of the

partnership agreement because she was wrongfully terminated from the Clinic. The plaintiff also claimed that WWP treated her as if she were fully vested at the time of the sale of real property from WWP to WWRE because it provided her with a written statement confirming the value of her proportionate interest, offered her the option to cash out as early as 2006, and paid her an amount sufficient to cover her expected capital gains tax, rendering her expulsion from WWP wrongful. The court found that the plaintiff's complaint offered no factual support for the proposition that the terms of the promissory note were unenforceable or that her removal from WWP constituted a breach of the WWP partnership agreement. The court also found the plaintiff's allegations regarding early vesting insufficient to state a claim for breach of the WWP partnership agreement, particularly considering that the plaintiff failed to identify any provision in the partnership agreement WWP and Rigby allegedly breached. The court thus dismissed the plaintiff's claim with leave to amend.

In her third amended complaint, the plaintiff alleges additional facts, primarily regarding the promissory note and restructuring of the entities, and complains that, upon her termination from the Clinic and expulsion from WWP, she received only a return of her principal payments, with no interest or equity accumulation, and did not receive her allocated share of the distribution of the property or a distribution equal to the amount that should have been reflected in her capital account. Although the plaintiff has alleged numerous additional facts and cited various provisions of the promissory note, amended partnership agreement, and documents she allegedly received as part of the UCP informational packet, she has not identified a single provision of the amended partnership agreement she contends WWP and Rigby breached. To the contrary, according to the plaintiff's own allegations, the termination of her employment with the Clinic constituted a withdrawal from WWP, as a result of which she was entitled only to a refund of her principal buy-in amount, which she admittedly received. Moreover, the plaintiff has provided no support for her position that the promissory note was unenforceable or that the defendants' treating her as if she was fully vested somehow constituted a breach of the

WWP partnership agreement.[14]  The court thus finds that the plaintiff has again failed to state a claim for breach of contract against WWP and Rigby and that such claim should be dismissed with prejudice.

### Breach of the Implied Covenant of Good Faith and Fair Dealing

In addition to her breach of contract claim, the plaintiff has asserted claims against Rigby, WWP, and the Clinic for breach of the implied covenant of good faith and fair dealing.  As set forth in the court's previous order, under Florida law, every contract contains an implied covenant of good faith and fair dealing designed to protect the parties' reasonable expectations.  *See Centurion Air Cargo, Inc. v. United Parcel Service, Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).  "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation."  *Id.*  A breach of the implied covenant claim may be dismissed as redundant if the conduct violating the implied covenant is duplicative of the breach of contract claim.  *See Merill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 2005 WL 975773, at *11 (S.D. Fla. Mar. 4, 2005).  Accordingly, this court has held that, "in order to state a claim for breach of the implied covenant of good faith and fair dealing, [p]laintiffs must identify the specific contract term(s) giving rise to the implied duty of good faith and also allege how [d]efendants breached their implied duty, alleging facts different from those giving rise to the breach of contract claim."  *See Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, at *6 (N.D. Fla. Sept. 19, 2006).

With respect to the plaintiff's first amended complaint, the defendants argued that the plaintiff failed to identify specific contract terms or allege facts in support of her claims for breach of the implied covenant of good faith and fair dealing different from those alleged in support of her breach of contract claims and that her claims for breach of the implied covenant of good faith and fair dealing therefore should be dismissed.  The court agreed, finding that the plaintiff's claim for breach of the implied covenant of good faith and fair dealing against WWP and Rigby was based on her alleged wrongful expulsion from

---

[14] In fact, in her complaint, the plaintiff references a document she received in connection with the reorganization that reiterated the fact that she would earn the vested value of her partnership shares only if she continued as a partner until her vested date.

Case No: 3:09cv495/MCR/EMT

WWP, which also served as the basis for her breach of contract claim against WWP and Rigby, and that her claim against the Clinic for breach of the implied covenant of good faith and fair dealing was based on her alleged wrongful termination and removal as a shareholder, which were the same allegations giving rise to her breach of contract claim against the Clinic.  The court further found that the plaintiff failed to identify specific terms in the Clinic agreement or WWP partnership agreement giving rise to the implied covenant of good faith and fair dealing and thus dismissed both counts with leave to amend.

In an effort to cure the deficiencies noted in her first amended complaint, the plaintiff relies in her third amended complaint on the provisions of the promissory note regarding vesting in equity and the effects of termination from the Clinic and alleges that WWP and Rigby had an implied duty to deal fairly with her as a partner in WWP and breached that duty by "us[ing] their capacity to have [her] terminated and removed as an employee/shareholder of the Clinic and partner in White Wilson Properties Partnership in order to prevent her from vesting in equity in the White Wilson Properties Partnership." The court finds the plaintiff's allegations sufficient to state a claim for breach of the implied covenant of good faith and fair dealing against WWP and Rigby and that the defendants' motion to dismiss such claim should be denied.[15]

In support of her claim against the Clinic for breach of the implied covenant of good faith and fair dealing, the plaintiff points to the provisions of the Clinic agreement stating that a physician must remain an employee of the Clinic in order to remain a shareholder and that when a non-vested partner in WWP ceases to be a shareholder in the Clinic, she also ceases to be a partner in WWP and alleges that the Clinic terminated her employment so that she would no longer be a shareholder and would forfeit her interest in WWP.  As the court found with regard to her first amended complaint, the plaintiff's claim against the Clinic for breach of the implied covenant of good faith and fair dealing is based on her

---

[15] The court would note that, because it has found that the plaintiff's breach of contract claim against WWP and Rigby should be dismissed, the plaintiff's claim against Rigby and WWP for breach of the implied covenant of good faith and fair dealing is no longer duplicative of any other claim asserted in her complaint.

Case No: 3:09cv495/MCR/EMT

alleged wrongful termination.[16] As a result, the claim is duplicative of her breach of contract claim and should be dismissed with prejudice.

### Breach of Fiduciary Duty by Rigby and Gieseman with Respect to the Clinic

The plaintiff alleged in her first amended complaint that Rigby and Gieseman, in their capacities as officers of the Clinic, owed fiduciary duties to her and breached those duties. The defendants argued that Rigby and Gieseman owed fiduciary duties to the plaintiff only in her capacity as a shareholder of the Clinic, not as an employee, and that the plaintiff's claim for breach of fiduciary duty should be dismissed because it focused on her termination as an employee of the Clinic. *See Orlinsky v. Patraka*, 971 So. 2d 796, 802 (Fla. 3d DCA 2007) ("Fiduciary duties are not implicated when the issue involves the right of the minority stockholder qua employee under an employment contract") (citations omitted). The court agreed with the defendants and dismissed the plaintiff's claim. In her third amended complaint, the plaintiff has added allegations regarding Rigby's and Gieseman's wrongful use of their positions as officers of the Clinic to terminate her employment, thereby removing her as a shareholder in the clinic, which the plaintiff claims constitutes a breach of the duties of loyalty and due care. Despite the additional allegations, the plaintiff's claim remains based on her alleged wrongful termination from the Clinic and thus must be dismissed with prejudice. *See id.*

### Breach of Fiduciary Duty by Rigby with Respect to WWP

The plaintiff also has asserted a claim for breach of fiduciary duty against Rigby, in his capacity as a partner in WWP. The defendants argued that the claim set forth in the plaintiff's first amended complaint failed to meet the *Iqbal* standard, and the court agreed. The plaintiff now alleges that Rigby used his position as the president and director of the Clinic to wrongfully remove her as an employee/shareholder of the Clinic in order to cause her expulsion from WWP in breach of the duties of loyalty and due care. The court finds that the plaintiff has pled facts sufficient to state a claim for breach of fiduciary duty against

---

[16] Although the plaintiff argues that her breach of contract claim against the Clinic is based on the Clinic's failure to abide by the termination procedures set forth in the Clinic agreement and bylaws, the plaintiff also alleges that she was wrongfully terminated. Indeed, in paragraph 232 of her third amended complaint, the plaintiff alleges that "the Clinic had no cause to suspend and then terminate Dr. Mendez as an employee and remove her as a shareholder, and such actions breached the Shareholder Employment Agreement."

Case No: 3:09cv495/MCR/EMT

Rigby, in his capacity as a partner of WWP, and that the defendants' motion to dismiss such claim should be denied.

### Declaratory Judgment Claims

As with her other claims, the plaintiff has re-asserted in her third amended complaint claims for a declaratory judgment regarding the parties' rights and obligations under the Clinic agreement and WWP partnership agreement. As set forth in the court's order on the defendants' previous motion to dismiss, "[t]he Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (internal marks and citation omitted). Indeed, the Act is "an enabling Act, which confers discretion on the courts rather than an absolute right on the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995); *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). The purpose of the act is to provide relief from uncertainty with respect to rights and other legal relations. *See Eisenberg v. Std. Ins. Co.*, 2009 WL 3667086, at *2 (M.D. Fla. Oct. 26, 2009). A determination of "whether a contract was adequately performed is unrelated to the purpose behind the Declaratory Judgment Act." *Id.*; *see also Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, 2007 WL 2811080, *2 (E.D. Mo. 2007). The court found that the declaratory judgment claims set forth in the plaintiff's first amended complaint were, at least to some extent, redundant of her breach of contract claims and that, although she described her request as one for a declaration of the parties' rights under the contracts, she effectively sought a declaration of breach and her damages. To that extent, the court concluded that declaratory relief was inappropriate. However, the court noted that the plaintiff also argued that, even if the court were to find no breach of the Clinic agreement or WWP partnership agreement, she would be entitled to a determination of her equitable interest in each entity, entitlement to profits, and valuation of amounts returned to her. To that extent, the court found that the plaintiff's declaratory judgment claims were not subsumed in her contract claims and dismissed them with leave to amend. Notably, however, the court advised the plaintiff that, in amending her complaint, she should specify, as to the Clinic, WWP, and WWRE, the factual bases for her claims to an equitable interest, share of the profits, and any other amount to be

returned to her in the event the court finds no breach of either agreement.  Despite the court's guidance and admonition regarding dismissal, the plaintiff has failed to specify in her third amended complaint any factual basis for such claims.  As a result, the plaintiff's claims for a declaratory judgment against the Clinic, WWP, and WWRE will be dismissed with prejudice.

**CONCLUSION**

In conclusion, the defendants' motion to dismiss the plaintiff's third amended complaint (doc. 102) is **GRANTED** with respect to Counts XI, XII, XIII, XVI, and XVII of the plaintiff's third amended complaint, all of which are dismissed **WITH PREJUDICE**, and **DENIED** with respect to Counts XIV and XV.  The stay is hereby lifted and the parties shall confer, as required by Rule 26(f), and submit a joint report within **fourteen (14) days** of the date of this order.

DONE and ORDERED this 29th day of July, 2011.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**